UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY SALONE, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD U.S., INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) No. 4:21 CV 1151 RWS<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM AND ORDER**

This case is before me on Plaintiff Gary Salone's motion for conditional class certification and court-supervised notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). ECF No. 44 ("Pl.'s Mot."). Defendants Cushman & Wakefield U.S., Inc. and Cushman & Wakefield, Inc. (collectively, "C&W") oppose conditional certification. C&W also request that, if I find conditional certification is appropriate, I do not adopt Salone's proposed notice to potential opt-in plaintiffs and instead allow the parties to submit a joint proposed notice form. For the reasons discussed below, Salone's motion will be granted in part and denied in part.

## **BACKGROUND**

C&W provide facility maintenance, cleaning, and related services for businesses and organizations throughout the United States. ECF No. 1 ("Compl.")

at ¶ 13.  From 2016 to 2018, Salone worked for C&W as a maintenance technician, also referred to as a facilities technician, in Ohio.  Id. at ¶ 5.  C&W's maintenance technicians are hourly non-exempt employees.  Id.  While employed by C&W, Salone regularly worked forty or more hours in a workweek.  Id. at ¶ 62.

As alleged in Salone's complaint, C&W have a companywide policy that requires maintenance employees[1] to take unpaid meal breaks.  Id. at ¶ 28.  Salone alleges that C&W apply these unpaid meal breaks by (a) automatically deducting time from maintenance employees' compensable hours; (b) requiring maintenance employees to clock in and out for meal breaks; or (c) requiring maintenance employees to submit their hours into a computer, then manually deducting time.  Id.  Salone alleges further that C&W apply these meal-break deductions even when meal breaks were not taken or were interrupted by work duties.  Id.

According to Salone, he and other maintenance employees were often unable to take full uninterrupted meal breaks because C&W require maintenance employees to prioritize work duties over meal breaks.  Id. at ¶¶ 29–30.  Salone also alleges that there was no formal process or procedure for maintenance employees to report a

---

[1] In his proposed class definition, Salone refers to "maintenance employees" rather than "maintenance technicians."  Although Salone does not define "maintenance employees," it is clear that he intends for the term to encompass maintenance technicians as well as other positions, including, but not limited to, building maintenance technicians; building operating engineers; engineers; facilities technicians; HVAC technicians; industrial technicians; mobile engineers; mobile maintenance technicians; and operating engineers.  See ECF Nos. 53 ("Pl.'s Reply") at pp. 3–6; 72 ("Pl.'s Supplemental Br.") at p. 7; 74 ("Pl.'s Resp.") at pp. 14–15.

missed meal break or have a meal-break deduction overridden. Id. at ¶ 31. Salone claims that, as a result of these policies and practices, C&W's maintenance employees were not fully compensated for all overtime work. Id. at ¶ 42.

On January 29, 2021, Salone filed this lawsuit on behalf of himself and other similarly situated employees, alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") and Ohio's wage laws. Salone contends that C&W have failed to properly pay their maintenance employees overtime wages and failed to maintain accurate records. Since the filing of this lawsuit, seven individuals have filed consent forms to join as opt-in plaintiffs. ECF Nos. 1-2 (Spencer Jones & Todd Bostwick); 6-1 (Jeffrey Wolberd); 48-1 (Alexandro Roldan & Carl Bueckert); 49-1 (Eric Barner & Hubert Johnson Jr.). Salone now seeks conditional class certification and court-supervised notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b).

## LEGAL STANDARD

Section 7 of the FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly wage for hours worked in excess of forty in a workweek. 29 U.S.C. § 207. A collective action to recover damages under the FLSA may be maintained by "any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." § 216(b). To join a collective action, similarly situated employees must "opt-in" by providing their

3

consent in writing.  Id.  District courts have discretion in "appropriate cases" to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

The FLSA does not define "similarly situated."  Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008).  Nor has the Eighth Circuit decided on a standard to use in determining "whether potential opt-in plaintiffs are 'similarly situated' under § 216(b)."  Beasely v. GC Servs. LP, 270 F.R.D. 442, 444 (E.D. Mo. 2010).  However, district courts in the Eighth Circuit have adopted a two-step analysis to determine whether employees are "similarly situated" for purposes of a collective action.  See, e.g., Littlefield v. Dealer Warranty Servs., LLC, 679 F.Supp.2d 1014, 1016 (E.D. Mo. 2010).

At the first step, the notice stage, the plaintiff seeks "early conditional class certification."  Id.  The plaintiff's burden at this stage is not onerous.  Id. at 1017.  The plaintiff need only provide "substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  Id. at 1016.  This can be shown "through the use of affidavits, supported by admissible evidence."  Id.  The plaintiff may not meet this burden by providing "unsupported assertions of additional plaintiffs and widespread FLSA violations."  Id.  If the plaintiff satisfies

4

his initial burden, the district court "conditionally certifies the class, and putative class members are given notice and the opportunity to opt-in." Id.

At the second step, the merits stage, the defendant typically moves to decertify the class. Id. This generally occurs after the close of discovery or "where discovery is largely complete and the matter is ready for trial." Huang, 248 F.R.D. at 227. A motion for decertification is delayed until the district court is able to determine whether the putative class members are, in fact, similarly situated. Id. Even at the merits stage, however, the requirement that class members be similarly situated does not mean that they need to be "identically situated." Id.

## DISCUSSION

This case is before me at the notice stage. Salone requests that I conditionally certify the following class:

> All current and former hourly, non-exempt maintenance employees of any Cushman & Wakefield entity who worked at least forty (40) hours in any workweek and had a meal deduction applied to their compensable hours worked during the three (3) years preceding the filing of this Motion and continuing through the final disposition of this case.

Pl.'s Mot. at p. 1. Salone also requests that I implement a procedure whereby court-supervised notice of FLSA claims is sent by United States mail and e-mail to putative class members. Id. To that end, Salone requests that I (1) approve his proposed notice to potential opt-in plaintiffs; (2) direct C&W to provide a list of all persons

5

who fit his proposed class definition; and (3) direct that court-approved notice be sent to potential opt-in plaintiffs. Id. at pp. 1–2.

### A.  **Conditional Certification**

In support of his motion, Salone has provided his own declaration testimony and the declaration testimony of six other current or former employees. ECF Nos. 44-2 ("Salone Decl."); 44-3 ("Bostwick Decl."); 44-4 ("Jones Decl."); 44-5 ("Wolberd Decl."); 53-1 ("Salone 2d Decl."); 53-2 at pp. 2–3 ("Jones 2d Decl."); 53-2 at pp. 4–6 ("Wolberd 2d Decl."); 53-3 at pp. 2–4 ("Barner Decl."); 53-3 at pp. 5–6 ("Johnson Decl."); 53-3 at pp. 7–9 ("Roldan Decl.") (collectively, "Pl.'s Decls."). The employees held various positions and worked in several locations. See, e.g., Barner Decl. at ¶¶ 3 & 5 (mobile engineer in California); Bostwick Decl. at ¶¶ 3 & 6 (maintenance technician in Utah); Roldan Decl. at ¶¶ 3 & 5 (building engineer in Maryland); Wolberd Decl. at ¶¶ 3 & 6 (maintenance technician in Ohio).

In their declarations, the employees state that: (1) C&W have a companywide policy or practice of requiring that meal-break deductions be applied to maintenance employees' compensable hours even when meal breaks were not taken or were interrupted by work duties; (2) they were often unable to take full uninterrupted meal breaks because C&W required them to prioritize work duties over meal breaks; and (3) they worked with and observed other maintenance employees who were also unable to take full uninterrupted meal breaks. See Pl.'s Decls. Each employee also

6

states that he was responsible for providing maintenance, cleaning, and other related services for C&W's clients.  See id.

In addition to the employees' declarations, Salone has provided a copy of nationwide job postings for various positions at C&W.  ECF No. 53-4 ("Defs.' Job Postings").  Salone asserts that these job postings demonstrate that many positions at C&W—namely, maintenance positions—are fundamentally the same with respect to the performance of maintenance services and C&W's requirement that maintenance employees prioritize work duties over meal breaks.  Pl.'s Supplemental Br. at p. 7.  The positions highlighted by Salone include building maintenance technicians, building operating engineers, engineers, facilities technicians, HVAC technicians, industrial technicians, mobile engineers, mobile maintenance technicians, and operating engineers.  Id.

### 1. Salone has satisfied his burden of demonstrating that he and the putative class members are similarly situated.

Salone has cleared the relatively low hurdle of demonstrating that he and the putative class members are similarly situated.  Salone has adequately alleged that they all share similar characteristics, specifically, they worked at least forty hours in a workweek, performed maintenance services, were treated as hourly non-exempt employees, and had meal-break deductions applied to their compensable hours.  Salone has also come forward with substantial allegations that they were all victims of a single decision, policy, or plan—namely, C&W's policy or practice of requiring

7

that meal-break deductions be applied to maintenance employees' compensable hours even when meal breaks were not taken or were interrupted by work duties.

Moreover, Salone has alleged that C&W knew or had reason to know that they were not compensating maintenance employees for all overtime work. Compl. at ¶¶ 32, 37, 65. This allegation is supported by the declarations provided by Salone, which contain statements indicating that C&W's managers and supervisors either directed or permitted maintenance employees to work through meal breaks without receiving appropriate compensation. See e.g., Jones Decl. at ¶¶ 9, 12–13; Roldan Decl. at ¶¶ 12–13; Salone 2d Decl. at ¶¶ 11–12; Wolberd 2d Decl. at ¶¶ 5, 8–9. Such a showing is important because "allegations that employees worked off-the-clock without overtime compensation typically require proof that management imposed or knew of the off-the-clock work." Greenwald v. Phillips Home Furnishings Inc., No. 4:08CV1128 CDP, 2009 WL 259744, at *5 (E.D. Mo. Feb. 3, 2009).

Because Salone has satisfied his burden of demonstrating that he and the putative class members are similarly situated, conditional certification is appropriate in this case. See McCauley v. First Option Mortg., LLC, No. 4:10CV980 JCH, 2010 WL 3522316, at *2–4 (E.D. Mo. Sept. 2, 2010); see also Mayberry v. SSM Health Buss., No. 4:15-CV-1680-CEJ, 2017 WL 2334981, at *2–4 (E.D. Mo. May 30, 2017) (finding conditional certification appropriate under both the lenient standard applied at the notice stage and a "more restrictive standard"); McClean v. Health

Sys., Inc., No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *5–6 (W.D. Mo. Dec. 12, 2011) (finding conditional certification appropriate under a heightened "intermediate standard of review").

### 2. C&W's arguments against conditional certification are unavailing at this stage.

Furthermore, C&W's arguments against conditional certification are unavailing at this stage. C&W argue that conditional certification is inappropriate because: (1) certification cannot be based on their lawful written policies; (2) the declarations provided by Salone do not establish that they have a common practice of violating their written policies; and (3) a collective action would require thousands of individual inquiries. I will address each of these arguments in turn, but I will first address the affidavits presented by C&W.

C&W have presented affidavits from employees that contradict the declarations provided by Salone. However, courts typically rely on the plaintiff's pleadings and affidavits when deciding whether to conditionally certify a class. Huang, 248 F.R.D. at 227. This is because courts should not make credibility determinations or findings of fact with respect to contradictory evidence at the notice stage. McCauley, 2010 WL 3522316, at *3. Accordingly, the affidavits presented by C&W will be afforded no weight at this time. See Tinsley v. Covenant Care Servs., LLC, No. 1:14CV00026 ACL, 2016 WL 393577, at *9 (E.D. Mo. Feb. 2, 2016) ("Courts have afforded no weight to 'happy camper' affidavits at the

9

conditional certification phase."); Bilskey v. Bluff City Ice, Inc., No. 1:13-CV-62 SNLJ, 2014 WL 320568, at *4 (E.D. Mo. Jan. 29, 2014) (same).

Turning to C&W's arguments, I note first that C&W suggest their written policies are lawful because they prohibit off-the-clock work and require maintenance employees to accurately record time. Even assuming C&W's written policies are lawful, "the mere existence of written policies that comply with the FLSA is irrelevant" if the plaintiff shows practices in violation of those policies. Hussein v. Capital Bldg. Servs. Grp., Inc., 152 F.Supp.3d 1182, 1193 (D. Minn. 2015); see also McClean, 2011 WL 6153091, at *6 (noting "a formal policy compensating employees for all hours worked during meal breaks" is insufficient to defeat FLSA claims if defendants "have a common practice of requiring employees to work during lunch breaks without compensation"). Therefore, C&W's written policies do not preclude conditional certification.

Nor is conditional certification precluded by C&W's argument that Salone has failed to establish that they have a common practice of violating their written policies. It is true that, "where an employer's formal policy is to compensate employees for all time worked," the plaintiff must show that the employer has a "common or uniform practice to not follow their formal, written policy." McClean, 2011 WL 6153091, at *6. C&W's argument is unpersuasive, however, because there is conflicting evidence as to whether they follow their written policies, and the issue

10

of whether they follow their written policies relates to the merits of the case and should not be resolved at this stage. See, e.g., McCauley, 2010 WL 3522316, at *3; Dernovish v. AT&T Operations, Inc., No. 09-0015-CV-W-ODS, 2010 WL 143692, at *2 (W.D. Mo. Jan. 12, 2010).

Moreover, to the extent Salone must show that C&W have a common practice of violating their written policies, he has met his burden. Salone alleges that C&W require maintenance employees to prioritize work duties over meal breaks and that C&W apply meal-break deductions to maintenance employees' compensable hours even when meal breaks were not taken or were interrupted by work duties. Compl. at ¶¶ 28–30. In the declarations provided by Salone, the employees state that they have direct and personal knowledge of these alleged policies and practices. See, e.g., Barner Decl. at ¶¶ 8 & 14; Bostwick Decl. at ¶¶ 7–9; Roldan Decl. at ¶¶ 7–9; Wolberd 2d Decl. at ¶¶ 5–7, 9. The employees also state that they have direct and personal knowledge of other maintenance employees who were victims of the same policies and practices. See, e.g., Johnson Decl. at ¶ 10; Jones Decl. at ¶ 10; Roldan Decl. at ¶ 10; Salone 2d Decl. at ¶ 4. While the declarations provided by Salone represent a small fraction of C&W's maintenance employees, at this stage, Salone has made a sufficient showing that C&W have a common practice of violating their purportedly lawful written policies. See McClean, 2011 WL 6153091, at *6; see also Jackson v. Synergies3 Tec Servs., LLC, No. 4:19-cv-00178-SRC, 2019 WL

11

5579514, at *3 (E.D. Mo. Oct. 29, 2019) (explaining a plaintiff is not required to "offer evidence from every state or location where [defendant] operates" because such a requirement "would impose an onerous burden").

C&W's argument regarding individual inquiries is also unpersuasive. C&W contend that conditional certification is inappropriate because individual inquiries would proliferate for each opt-in plaintiff if a class were certified. According to C&W, the individual inquiries would include, among other things, whether maintenance employees worked off-the-clock during meal breaks; why maintenance employees worked off-the-clock through meal breaks; and whether supervisors knew about or should have known about off-the-clock work. C&W may ultimately be correct about individual inquiries. However, arguments concerning the necessity of individual inquiries and the merits of claims are inappropriate at the notice stage and should be raised at the merits stage. Schmaltz v. O'Reilly Auto. Stores, Inc., No. 4:12-CV-1056-JAR, 2013 WL 943752, at *8 (E.D. Mo. Mar. 11, 2013); see also McCauley, 2010 WL 3522316, at *3.

### 3. Salone has made a sufficient showing for conditional certification of a nationwide class.

The final issue regarding conditional certification is whether a nationwide class is appropriate. C&W argue that a nationwide class is inappropriate and overly broad because Salone has provided declarations from only seven employees in four states—Ohio, Utah, California, and Maryland. In cases involving allegations of off-

12

the-clock work, "[w]here there is no evidence that managers, nationwide, failed to follow FLSA policies or affirmatively directed and approved alleged improper practices," conditional certification of a nationwide class is generally inappropriate. Jost v. Commonwealth Land Title Ins. Co., No. 4:08CV734 CDP, 2009 WL 211943, at *4 (E.D. Mo. Jan. 27, 2009); see also Settles v. General Elec., No. 12-00602-cv-W-BP, 2013 WL 12143084, at *4 (W.D. Mo. Feb. 19, 2013). Here, however, Salone has made a sufficient showing that C&W's managers and supervisors, nationwide, failed to follow FLSA policies.

Salone alleges that C&W knew or had reason to know that they were not compensating him and other maintenance employees for all overtime work. Compl. at ¶¶ 32, 37, 65. This allegation is supported by the declarations provided by Salone, which were given by employees that worked for various managers and supervisors in several locations. See, e.g., Barner Decl. at ¶ 15; Jones Decl. at ¶ 12; Roldan Decl. at ¶ 13; Wolberd 2d Decl. at ¶ 8. In their declarations, some of the employees also specifically implicate their respective supervisors and managers in C&W's alleged policy or practice of requiring that meal-break deductions be applied to maintenance employees' compensable hours even when meal breaks were not taken or were interrupted by work duties. See Jones Decl. at ¶¶ 9 & 13; Roldan Decl. at ¶¶ 9 & 12; Salone 2d Decl. at ¶ 11; Wolberd 2d Decl. at ¶¶ 5 & 9. Furthermore, Salone has provided a copy of nationwide job postings for various positions at C&W,

13

which further suggest that C&W's alleged improper policies and practices are companywide and not merely the result of a few rogue managers.

Given the lenient standard for conditional certification, I find that Salone has made a sufficient showing that C&W's managers and supervisors, nationwide, failed to follow FLSA policies. See Jewell v. Aaron's, Inc., No. 1:12-CV-0563-AT, 2012 WL 2477039, at *7 (N.D. Ga. June 28, 2012) (quoting Falcon v. Starbucks Corp., 580 F.Supp.2d 528, 536 (S.D. Tex. 2008)) (stating a plaintiff "need not show that 'all managers nationwide acted in lockstep'" in order to make a sufficient showing at the notice stage).  If discovery reveals facts that support C&W's arguments, C&W may renew them at the merits stage in a motion for decertification or a motion to limit the scope of the class.  See Springer v. Semper Blue Professional Servs., Inc., No. 18-00968-CV-W-BP, 2019 WL 12288345, at *2 (W.D. Mo. Mar. 18, 2019); Jewell, 2012 WL 2477039, at *7.  However, at this stage, "judicial economy is served by conditionally certifying a larger, more inclusive class." Littlefield, 679 F.Supp.2d at 1019.  Accordingly, a nationwide class will be conditionally certified.

In sum, I will authorize the sending of notices to all current and former hourly non-exempt maintenance employees of Cushman & Wakefield U.S., Inc. and Cushman & Wakefield, Inc. who, during the three years preceding the date of this order and continuing through the final disposition of this case, worked at least forty hours in a workweek and had a meal-break deduction applied to their compensable

14

hours. Although this class definition is not based on job titles, it is sufficient to identify the employees who may be covered by this lawsuit. See Dernovish, 2010 WL 143692, at *2; see also Knecht v. C&W Facility Servs., Inc., 534 F.Supp.3d 870, 879 (S.D. Ohio 2021) (proposing a working definition including "hourly, non-exempt maintenance employees of C&W Facility Services, Inc.").

As in Knecht v. C&W Facility Servs., Inc., the conditionally certified class will not be limited to those employees who had a meal-break deduction applied to their compensable hours in a particular manner. See 534 F.Supp.3d at 877–78. The class will, however, be limited to current and former employees of the entities named as defendants in this lawsuit: Cushman & Wakefield U.S., Inc. and Cushman & Wakefield, Inc. See id. at 879 (noting a hesitancy to include individuals who worked for entities that were not named as defendants because "such defendants were not served … and had no opportunity to be heard on the certification motion").

### B.  Notice to Potential Opt-In Plaintiffs

The remaining issues before me relate to notice to potential opt-in plaintiffs. The FLSA requires notice of a collective action to be "accurate and timely" so potential opt-in plaintiffs can "make informed decisions about whether to participate." Littlefield, 679 F.Supp.2d at 1018. To ensure that notice is accurate and timely, district courts must approve "both the content and method of disseminating notice." Id. District courts also frequently order defendants to

"disclose the names of potential plaintiffs to plaintiffs' attorneys." Id. While the district court should "be cautious to avoid endorsing, or appearing to endorse, the merits of the underlying claim," the district court should not alter the plaintiff's proposed notice form "unless certain changes are necessary." Id.

Salone requests that I implement a procedure whereby court-supervised notice of FLSA claims is sent by United States mail and e-mail to the putative class members. Pl.'s Mot. at p. 1. To that end, Salone requests that I approve his proposed notice to potential opt-in plaintiffs and direct C&W to provide a list of all putative class members, including their full names, dates of employment, facility locations, job titles, last known home addresses, and personal e-mail addresses. Id. at p. 2. C&W have not provided specific objections to Salone's proposed notice, but they request that I do not adopt Salone's proposal and instead allow the parties to meet and confer and submit a joint proposed notice form. In their opposition to Salone's motion, C&W do not mention Salone's request for a list of putative class members.

Because C&W appear to have objections to Salone's proposed notice, which have not been briefed, I will exercise my discretion and order the parties to meet and confer and submit a joint proposed notice form. See Perrin v. Papa John's Intern., Inc., No. 4:09CV01335 AGF, 2011 4089251, at *5 (E.D. Mo. Sept. 14, 2011). If the parties cannot agree on a joint proposed notice form after good faith efforts, the parties will be required to file their own proposed notice forms, each with a brief

16

memorandum setting out the areas of disagreement and support for their position, and I will review the competing proposals and choose the one to be entered.

As for Salone's request for a list of putative class members, C&W will be ordered to provide Salone's counsel with a list of all putative class members, including their full names, dates of employment, locations worked, job titles, last known home addresses, and e-mail addresses.  See, e.g., MacMann v. Tropicana Entm't, Inc., No. 4:19 CV 404 RWS, 2021 WL 1105500, at *8 (E.D. Mo. Mar. 23, 2021) (ordering defendants to provide "names, dates of service, last known mailing addresses, email addresses and telephone numbers"); McClean, 2011 WL 6153091, at *6 (ordering defendant to provide "names, addresses, dates of employment, job titles, facility locations, and telephone numbers").

## CONCLUSION

For the foregoing reasons, Salone's motion will be granted with modifications as to conditional certification and denied without prejudice as to court-supervised notice to potential opt-in plaintiffs.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Gary Salone's motion for conditional class certification and court-supervised notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b) [44] is **GRANTED** in part and **DENIED**

in part. The motion is granted with modifications as to conditional certification and denied without prejudice as to court-supervised notice to potential opt-in plaintiffs.

**IT IS FURTHER ORDERED** that the conditionally certified class shall include all current and former hourly non-exempt maintenance employees of Cushman & Wakefield U.S., Inc. and Cushman & Wakefield, Inc. who, during the three years preceding the date of this order and continuing through the final disposition of this case, worked at least forty hours in a workweek and had a meal-break deduction applied to their compensable hours.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and submit a joint proposed notice form by no later than **February 3, 2022**. If the parties cannot agree on a joint proposed notice form after good faith efforts, the parties shall file their own proposed notice forms, each with a brief memorandum setting out the areas of disagreement and support for their position, by no later than **February 3, 2022**. If the parties file their own proposed notice forms, I will review the competing proposals and choose the one to be entered.

**IT IS FURTHER ORDERED** that Defendants Cushman & Wakefield U.S., Inc. and Cushman & Wakefield, Inc. shall provide Plaintiff Gary Salone's counsel with a list of all putative class members by no later than **February 3, 2022**. The list shall be provided in a readable electronic data file and shall include the putative class

members' full names, dates of employment, facility locations, job titles, last known home addresses, and e-mail addresses.

                                                     RODNEY W. SIPPEL
                                                     UNITED STATES DISTRICT JUDGE

Dated this 13th day of January 2022.